**NORWICH PHARMACAL COMPANY, Plaintiff,**

v.

**S.S. BAYAMON, her engines, boilers, etc. and Puerto Rico Maritime Shipping Authority, Defendants.**

**No. 78 Civ. 1877 (WCC).**

United States District Court, S. D. New York.

July 11, 1979.

---

Purrington & McConnell, New York City, for plaintiff; Stephen A. Agus, John Hay McConnell, Robert Dembia, New York City, of counsel.

Dougherty, Ryan, Mahoney, Pellegrino, Giuffra & Zambito, New York City, for defendants; Peter J. Zambito, New York City, of counsel.

## OPINION AND ORDER

CONNER, District Judge:

This is an action to recover for damages to a shipment of pharmaceuticals shipped from San Juan, Puerto Rico to New York aboard defendant's vessel, the S/S BAYO-MON, pursuant to a bill of lading issued by defendant in August 1977 at San Juan.

The bill of lading, on its face, contains the following wording: "Drugs & Medicines Agreed declared value not to exceed 50 cents per pound-Item No. 17.120."

On the reverse side of defendant's Short Form Bill of Lading, under the heading "Contract and Terms and Conditions" it is stated: "This bill of lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States of America, ["COGSA"] Approved April 16, 1936."

Defendant asserts as a defense to the complaint that

"Pursuant to the bill of lading and tariff provisions incorporated therein, the parties to the contract of carriage agreed to a valuation of $.50 per lb. and plaintiff's damages are limited thereby."

Presently before the Court are plaintiff's motion to strike this defense from the Answer on the ground that the valuation wording upon which the defense is based is void under COGSA; and defendant's cross-motion for an order limiting defendant's liability to 50 cents per lb. in accordance with its tariff and bill of lading provisions and denying plaintiff's motion to strike. There are no disputed issues of fact.

Plaintiff relies on 46 U.S.C. § 1312, which provides:

"This chapter shall apply to all contracts for carriage of goods by sea to or from ports ' of the United States in foreign trade. As used in this chapter the term 'United States' includes its districts, territories, and possessions. The term 'foreign trade' means the transportation of goods between the ports of the United States and ports of foreign countries. Nothing in this chapter shall be held to apply to contracts for carriage of goods by sea between any port of the United States or its possessions, and any other port of the United States or its possessions: Provided, however, That any bill of lading or similar document of title which is evidence of a contract for the carriage of goods by sea between such ports, containing an express statement that it shall be subject to the provisions of this chapter, shall be subjected hereto as fully as if subject hereto by the express provisions of this chapter."

Plaintiff argues that since the bill of lading in the instant case contained "an express statement that it shall be subject to the provisions" of COGSA, any agreement that places a value on cargo at less than that provided by COGSA is void under 46 U.S.C. § 1303(8), which provides:

"Any clause, covenant or agreement in a contract of carriage relieving the carrier or the ship from liability for loss or damage to or in connection with the goods, arising from negligence, fault or failure in the duties and obligations provided in this section, or lessening such liability otherwise than as provided in this chapter, shall be null and void and of no effect."

Section 1304(5) provides:

"Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States, or in case of goods

not shipped in packages, per customary freight unit, or the equivalent of that sum in other currency, unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading. This declaration if embodied in the bill of lading, shall be prima facie evidence, but shall not be conclusive on the carrier.

"By agreement between the carrier, master, or agent of the carrier, and the shipper another maximum amount than that mentioned in this paragraph may be fixed: *Provided*, That such maximum shall not be less than the figure above named. In no event shall the carrier be liable for more than the amount of damage actually sustained."

It has been ruled that, in cases involving bills of lading subject to COGSA, *ex proprio vigore*, valuation clauses that limit the liability of the carrier below $500, are void. *David Crystal, Inc. v. Cunard Steamship Co.*, 339 F.2d 295, 298 (2d Cir. 1964) (provision limiting liability of carrier to £20 per package); *Otis McAllister & Co. v. Skibs a/s MARIE BAKKE*, 260 F.2d 181 (9th Cir. 1958), *cert. denied*, 359 U.S. 915, 79 S.Ct. 584, 3 L.Ed.2d 576 (1959) (provision that actual value shall be an amount equal to shipper's invoice value, plus freight, insurance, and duties); *Pan-Am Trade & Credit Corp. v. The Campfire*, 156 F.2d 603 (2d Cir.) *cert. denied*, 329 U.S. 774, 67 S.Ct. 194, 91 L.Ed. 666 (1946) (provision for pro-rating in case of partial loss); *Sanib Corporation v. United Fruit Co.*, 74 F.Supp. 64, 67 (S.D.N.Y.1947) (provision that value of goods not to exceed $100 per package).

Defendant argues that where, as here, COGSA does not apply of its own force and effect, but, rather, is incorporated by reference in the bill of lading, the provisions of COGSA should be given effect consistent with other bill of lading and tariff provisions, such as the 50-cents-per-pound limitation on the face of the bill of lading in the instant case.

However, in *Hanover Insurance Co. v. Shulman Transport Enterprises, Inc.*, 581 F.2d 268 (1st Cir. 1978), the court held a clause limiting the carrier's liability to $50 void, in a bill of lading that incorporated COGSA by reference. *Hanover* involved a shipment from New York to San Juan, Puerto Rico, to which COGSA does not apply. The parties, however, made the contract subject to the terms of COGSA, which the court found made COGSA apply "as fully as if subject [thereto by the express provisions of COGSA]," citing 46 U.S.C. § 1312. There was no dispute as to the facts, or as to liability. The sole issue was the validity of a clause, written in small type on the face of the bill of lading, stating: "The company will not pay over $50, in case of any loss, for any shipment, unless a greater value is declared and charges for such greater value paid." Judge Moore of the Second Circuit, sitting by designation, concluded that the $500 limitation of liability provision of 46 U.S.C. § 1304(5) "serves as a *minimum* level of valuation," which "represents a binding allocation of risks between the carrier and shipper . . . that cannot be reduced by contractual agreement." *Hanover Insurance Co. v. Shulman Transportation Enterprises, Inc.*, supra, 581 F.2d at 273 (emphasis in original).[1]

Nonetheless, this case is distinguishable in a number of significant respects from *Hanover* and other cases that have declared limitation provisions void.

More importantly, this case does not involve a printed "clause" or boilerplate provision in a bill of lading prepared by the carrier and intended by the carrier to limit its liability in all instances, regardless of the actual value of the shipment. The valua-

1. Similarly, in *Commonwealth Petrochemicals, Inc. v. S/S Puerto Rico*, 455 F.Supp. 310 (D.Md. 1978), involving a shipment not subject to COGSA, but where the bill of lading incorporated the provisions of COGSA, the court found that under 46 U.S.C. § 1312, the shipment was subject to the limitation of liability provisions of COGSA, 46 U.S.C. §§ 1304(5) and 1303(8), and that the carrier's attempt to lessen its liability through an expansion of the definition of "package" below the minimum liabilities set by COGSA was invalid. See also *Pan American World Airways v. California Stevedore & Ballast*, 559 F.2d 1173, 1175 n.3 (9th Cir. 1977).

tion, which is typed plainly on the face of the bill of lading (not buried in small print), applies to this particular shipment. Thus, we are not faced with an effort by carriers acting "in concert" to insert into bills of lading "carefully contrived clauses," Gilmore and Black, The Law of Admiralty (2d ed. 1975) at 189 n.156, creating "all embracing exceptions to liability." *Tessler Brothers (B.C.) Ltd. v. Italpacific Line*, 494 F.2d 438, 444 (9th Cir. 1974). Nor does this form of agreed valuation require a shipper "to make a detailed study of the fine print clauses of a carrier's regular bill of lading on each ·occasion before shipping a package." *Tessler Brothers (B.C.) Ltd. v. Italpacific Line, supra*, 494 F.2d at 445. It is in fact the shipper in this case who is attempting to claim the benefit of the small print on the back of the bill of lading incorporating COGSA.

Moreover, this agreed valuation was not chosen by the carrier to limit its liability, but by the shipper in order to obtain a lower freight rate. Finally, in *Hanover* and a number of the other cases cited above there was no reasonable relationship between the valuation and the actual value of the cargo. Indeed, in *Hanover* and *David Crystal*, the amount was found so low as to offend public policy.

In contrast to the context of unequal bargaining power that COGSA was designed to redress, this is a situation where the shipper bargained for a lower rate, and having had the benefit of that rate, now seeks to avoid its consequences.

Despite the literal language of the statute, and the opinion of courts and commentators that it prohibits the parties from agreeing in any manner to any term that diminishes the carrier's liability, I believe that such a result in this case would pervert, rather than serve, the purposes of the statute.

Moreover, because COGSA does not apply to this shipment *ex proprio vigore*, there is authority for treating the incorporation of COGSA as a "term[ ] of the contract evidenced by the bill of lading," and "to construe the contract to give consistent effect . . . . to all of its terms." *Pannell v. United States Lines Company*, 263 F.2d 497, 498 (2d Cir. 1959). In that case the court held:

> "The parties have defined what 'package' means in the bill of lading. We see no reason why this specific definition should not prevail over the general term 'package' contained in the Act. It is true that if the Act applied *ex proprio vigore* the yacht, like the tractor in the *Gulf Italia* [*Gulf Italia Co. v. American Export Lines, Inc.*, 263 F.2d 135 (2d Cir.)] case, could not be deemed a 'package,' and the parties by so describing it could not reduce the carrier's liability. But we cannot agree with the District Court's view that because the definition would be void when applied to shipments covered by the Act, it should likewise be ineffective to reduce liability where the Act is not operative as a matter of law. Since the shipper could have declared the value of his yacht and had full protection against damage by paying a higher freight rate, we cannot regard the $500 limitation as in the nature of a 'trap.'"

I am aware that the *Pannell* case may be distinguished on the ground that it involved only a "limited incorporation" of COGSA, which "does not trigger the entire Act," *In re Marine Sulphur Queen*, 460 F.2d 89, 103 (2d Cir.), *cert. denied, U. S. Fire Ins. Co. v. Marine Sulphur Transport Corp.*, 409 U.S. 982, 93 S.Ct. 318, 34 L.Ed.2d 246 (1972). However, although the matter is not without doubt, the Court finds that *Pannell* directly addresses the business realities and equitable considerations presented by this case, and is therefore more persuasive precedent than *Hanover*.

Accordingly, plaintiff's motion to strike defendant's sixth affirmative defense is denied; defendant's motion to limit its liability to 50 cents per pound is granted.

SO ORDERED.