WATERMILL EXPORT, INC., Plaintiff,

v.

MV "PONCE", her engines, boilers, etc., MV "BAYAMON", her engines, boilers, etc., MV "FORTALEZA", her engines, boilers, etc., Puerto Rico Maritime Shipping Authority, Sun Leasing Co., Ltd., United States Trust Company of New York and 650 Leasing Corporation, Defendants.

No. 78 Civ. 1426.

United States District Court,
S. D. New York.

Feb. 2, 1981.

---

Hill, Rivkins, Carey, Loesberg & O'Brien, New York City, for plaintiff; Martin B. Mulroy, John Eric Olson, New York City, of counsel.

Dougherty, Ryan, Mahoney, Pellegrino, Giuffra & Zambito, New York City, for defendants; Peter J. Zambito, New York City, of counsel.

OPINION

SOFAER, District Judge:

Watermill Export, Inc. ("Watermill") has brought this action to recover for damage to potatoes shipped aboard defendants' vessels. Watermill has moved to strike defendants' sixth affirmative defense. That defense, based upon a clause in the governing bills of lading, would limit defendants' total potential liability to $500 for each of the large metal trailers in which the potatoes were shipped. The motion is granted.

## I. Incorporation of COGSA

The first issue is the extent to which the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. §§ 1300–15, governs the legal relationship between the parties. By its own terms, COGSA applies only to contracts of carriage relating to shipments between United States ports and foreign ports. *Id.* § 1312. It does not apply automatically to the contracts in this litigation, because the shipments were between ports of the East coast of the United States and San Juan, Puerto Rico. Section 13 of COGSA provides, however, that in connection with contracts for carriage of goods involving only ports of the United States and its possessions:

> any bill of lading or similar document of title which is evidence of a contract for the carriage of goods by sea ... containing an express statement that it shall be subject to the provisions of this chapter, shall be subjected hereto as fully as if subject hereto by the express provisions of this chapter.

46 U.S.C. § 1312. The bills of lading that constituted the contracts in this action each provided that "[t]his bill of lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States of America, approved April 16, 1934."

Plaintiff contends that the language of both section 13 and the bills of lading establishes that the contracts at issue in this action are fully subject to the provisions of COGSA. Plaintiff seeks to have the Court

apply section 3(8) of COGSA, 46 U.S.C. § 1303(8), which provides that any clause in a contract of carriage that purports to limit the liability of a carrier beyond a level otherwise prescribed in the statute is void. Defendants take the position that the incorporation of COGSA into a contract of carriage merely makes the statute a part of the overall contract, and that courts must construe such a contract so as to give consistent effect to all of its terms. Under their formulation, the specific limitation of liability contained in the bills of lading would prevail over the general provisions of COGSA.

Defendants cite a number of cases to support their position, but most are easily distinguishable. *Pannell v. United States Lines Co.*, 263 F.2d 497 (2d Cir.), *cert. denied*, 359 U.S. 1013, 79 S.Ct. 1151, 3 L.Ed.2d 1037 (1959), for example, differs from this case in two important ways. First, *Pannell* involved only a partial incorporation of COGSA: the bill of lading there provided that "the [defendant] carrier shall have the *benefit* of all and the same rights, immunities, exceptions and limitations contained in said Carriage of Goods by Sea Act." *Id.* at 498 (emphasis added). Second, while the shipments at issue in *Pannell* were between London and New York, so that COGSA would usually apply *ex proprio vigore*, the goods were transported on the ship's deck, making the statute inapplicable. 46 U.S.C. § 1301(c). Therefore, *Pannell* was not a case involving shipments to and from ports of the United States and its possessions and section 13 of COGSA, 46 U.S.C. § 1312, does not apply to make the transactions fully subject to the statute. Many of the other cases cited by defendants are distinguishable for one or both of these reasons. *See, e. g., PPG Industries, Inc. v. Ashland Oil Co.-Thomas Petroleum Transit Division*, 527 F.2d 502 (3d Cir. 1975) (partial incorporation); *United States v. M/V Marilena P*, 433 F.2d 164 (4th Cir. 1969) (both partial incorporation and not subject to section 13 of COGSA); *J. Aron & Co. v. The Askvin*, 267 F.2d 276 (2d Cir. 1959) (partial incorporation); *Export Project Services Ltd. v. S. S. Steinfels*, [1975] A.M.C. 765 (partial in-

corporation); *Wirth, Ltd. v. SS Acadia Forest*, 376 F.Supp. 785 (E.D.La.1974), *rev'd on other grounds*, 537 F.2d 1272 (5th Cir. 1976) (not subject to section 13 of COGSA); *Empacadora Puertorriquena De Carnes, Inc. v. Alterman Transport Line, Inc.*, 303 F.Supp. 474 (D.P.R.1969) (partial incorporation).

These two distinctions largely explain the oft-quoted language in *Pannell* that "[w]here a statute is incorporated by reference its provisions are merely terms of the contract evidenced by the bill of lading." 263 F.2d at 498. When parties choose to incorporate only a portion of a statute into the contracts governing their transaction, then it is only those incorporated provisions that become part of the agreement. If ambiguities or inconsistencies are found, courts should follow the advice in *Pannell* "to construe the contract so as to give consistent effect, if possible, to all of its terms." *Id.*

■ The same reasoning applies, though not quite so convincingly, to situations in which COGSA is fully incorporated but section 13, for some reason, does not apply to make the contract of carriage fully subject to the statutory provisions. When that occurs, courts should apply general rules of contract interpretation, and the argument that terms of COGSA should be given no greater weight than other contractual provisions is tenable, if not entirely convincing.

■ In the present case, however, the parties fully incorporated the provisions of COGSA into their contract and the statute explicitly provides that its terms will fully govern their relationship. Under these circumstances, any contractual term that contradicts a provision of COGSA must, absent extraordinary circumstances, be considered null and void. A contrary conclusion would tend to pervert section 13, which must have been intended to permit parties whose contracts would otherwise fall outside the coverage of COGSA to bring their transactions fully within the purview of the statute.

At least two cases (including one in this District) have reached contrary conclusions on similar facts. In *Norwich Pharmacal Co.*

*v. S. S. Bayamon*, 474 F.Supp. 240 (S.D.N.Y. 1979), *aff'd without opinion*, 622 F.2d 575 (2d Cir. 1980), the bill of lading contained precisely the same clause incorporating COGSA as did the bills of lading involved in the present litigation. In addition, the contract involved shipments from San Juan, Puerto Rico to New York, so section 13 was applicable. Defendants there, as here, sought to enforce a limitation of liability clause that would be void under COGSA. The *Norwich* court noted that in such situations it has normally been held that COGSA provisions are determinative. But Judge Conner found the case "distinguishable in a number of significant respects from cases that have declared limitation provisions void." *Id.* at 242.

█ Unlike many of these other cases, *Norwich* did not involve a boilerplate provision in a bill of lading prepared solely by the carrier, without any negotiation and intended to limit liability in all instances, regardless of the actual value of the shipment. Rather, the limiting clause was typed plainly on the face of the bill of lading and provided for an agreed valuation of the particular goods, one that bore a reasonable relationship to the actual value of the cargo. Moreover, the valuation was not chosen by the carrier in order to limit its potential liability, but by the shipper in an apparent effort to obtain a more favorable freight rate. It was the shipper in *Norwich* who was attempting to reap the benefit of the small print in the bill of lading—the clause incorporating COGSA. In short, *Norwich* did not present the classic situation of unequal bargaining power that COGSA was designed to remedy.

The factual setting of the present litigation is entirely different. The clause limiting defendants' liability to $500 per trailer is clearly boilerplate language. The clause is buried in defendants' long-form bill of lading, and defendants provide no warning of it in the short-form bill presented to plaintiff. The fact that plaintiff may have had constructive notice of this clause is irrelevant in light of COGSA's mandate that the shipper not be compelled to make a

detailed study of each fine-print clause of the carrier's bill of lading. *Caterpillar Overseas, S. A. v. The Expeditor*, 318 F.2d 720, 722 (2d Cir.), *cert. denied*, 375 U.S. 942, 84 S.Ct. 347, 11 L.Ed.2d 272 (1963).

Furthermore, the clause in question functions solely as a device to limit defendants' potential liability: it is not an "agreed to valuation," bargained for by the shipper in order to obtain a lower freight rate (the rate charged was per 100 pounds, not per container). Neither is the clause reasonably related to the actual value of plaintiff's cargo. The clause is simply an attempt by defendants "to insert all embracing exceptions to liability," *Tessler Brothers (B.C.) Ltd. v. Italpacific Line*, 494 F.2d 438, 444 (9th Cir. 1974), in this and all other contracts for containerized shipments.

Finally, a careful reading of defendants' bills of lading and tariffs is necessary in order to comprehend that defendants have attempted to limit their liability to $500 per trailer. Indeed, at first glance, the provisions in the bills of lading and tariffs appear entirely inconsistent. Plaintiff reasonably could have believed that the defendants' liability was limited to $500 per customary freight unit, and that further negotiation and precise valuation were unnecessary.

In short, although an exception may be justified by the extraordinary circumstances in *Norwich*, the general principle is that, when the parties have incorporated COGSA into their contract, the statute applies "as fully as if subject hereto by the express provisions of [the Act]." 46 U.S.C. § 1312. A contrary conclusion was reached in *Commonwealth Petrochemicals, Inc. v. SS Puerto Rico*, 607 F.2d 322 (4th Cir. 1979), which involves facts almost indistinguishable from those now presented. But for the reasons set forth in this opinion, the general rule is that COGSA is given statutory rank when incorporated into a contract of carriage by reference. Thus, section 3(8) of COGSA, 46 U.S.C. § 1303(8), applies to this action, and makes void any provision in the bill of lading that attempts to limit defendants' potential liability beyond that permitted by the statute.

# 616

## II. *The Package Limitation Issue*

■ Section 4(5), 46 U.S.C. § 1304(5), provides that:

> [n]either the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package . . . unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading . . . .
>
> By agreement between the carrier, master, or agent of the carrier, and the shipper another maximum amount than that mentioned in this paragraph may be fixed: *Provided*, that such maximum shall not be less than the figure above named.

Defendants' contend that each of the large metal trailers is a "package" within the meaning of section 4(5) and that liability should accordingly be limited to $500 per package—precisely the same figure as if the limitation on liability in the bill of lading were applicable. Plaintiff argues, on the other hand, that the trailers are not packages and that the potatoes were shipped in bulk. Hence, the maximum potential liability should be $500 per customary freight unit, in this case alleged to be per 100 pounds of potatoes. The application of section 4(5), therefore, hinges on the definition of the word "package" within the meaning of COGSA.

The increased use of large, carrier-owned containers in marine transportation has generated a great deal of litigation, a substantial part of which concerns the COGSA per package limitation. *See generally* Simon, *The Law of Shipping Containers*, 5 J.Mar.L. & Com. 507 (1974). Because a broad reading of the term "package" to include items such as containers and trilers usually results in a substantial reduction of a carrier's potential liability, the legal effect of the trend toward containerization on section 4(5) of COGSA is an important issue. That issue has arisen repeatedly in this Circuit.

A strong argument could be made that a container should almost never be considered a package for purposes of the COGSA limitation of liability clause. Section 4(5) was drafted long before containerization became an integral part of the shipping industry, *see Simon, supra*, and the statutory draftsmen presumably intended the word "package" to have its ordinary meaning. *See, e. g., Hartford Fire Insurance Co. v. Pacific Far East Line, Inc.*, 491 F.2d 960 (9th Cir.), *cert. denied*, 419 U.S. 873, 95 S.Ct. 134, 42 L.Ed.2d 112 (1974). The drafters sought to provide parties to contracts of carriage with a standard that would promote uniformity and predictability "so that the parties could easily ascertain at the time of contract when additional coverage was needed, place the risk of additional loss upon one or the other, and thus avoid the pains of litigation." *Standard Electrica, S. A. v. Hamburg Sudamerikanishe Dampfschifffahrts-Gesellschaft*, 375 F.2d 943, 945 (2d Cir.), *cert. denied*, 389 U.S. 831, 88 S.Ct. 97, 19 L.Ed.2d 89 (1967). *See Mitsui & Co. v. American Export Lines, Inc.*, 636 F.2d 807, at 814 (2d Cir. 1981).

Moreover, one of the major objectives of COGSA was to prevent carriers from taking advantage of their superior bargaining position by inserting clauses into bills of lading to limit potential liability. *Id.; Caterpillar Overseas S.A., supra*, at 722; *Jones v. The Flying Clipper*, 116 F.Supp. 386, 388–89 (S.D.N.Y.1953) (citing legislative history); G. Gilmore & C. Black, *The Law of Admiralty*, at 189 n.156. (2d ed. 1975); Simon, *supra* at 519. "In interpreting § 4(5), courts must therefore take a critical look at any proposed construction of that section that would reduce a carrier's liability beyond reasonable limits." *Mitsui & Co., supra*, at 815.

Statutory language, however, must often be molded to fit unforeseen circumstances and situations. Such is the case with the term "packages." The draftsmen of section 4(5) could not have anticipated that containerization would, to some extent, make traditional concepts of packaging obsolete. *Standard Electrica, S.A., supra*. These rap-

id changes in the practices of the shipping industry have led the courts to attempt to develop new standards for determining when a container is a package within the meaning of section 4(5) of COGSA. The Second Circuit, with its abundance of admiralty cases, has been particularly active in this endeavor. Its most ambitious effort came in *Royal Typewriter Co. v. M/V Kulmerland,* 483 F.2d 645, 648 (2d Cir. 1973), *aff'g* 346 F.Supp. 1019 (S.D.N.Y.1972), in which the court promulgated a so-called "functional economics test" for deciding cases under section 4(5). Defendants rely heavily on the applicability of the *Kulmerland* standard to the facts of this case.

For the reasons discussed at length in its recent opinion in *Mitsui & Co., supra,* the Second Circuit has abandoned the functional economics test, at least in certain cases.[1] In an opinion that greatly clarifies this extremely difficult area of admiralty law, Judge Friendly concluded that, when a shipment is made in a container supplied by the carrier, the container is generally not a package if its contents have been disclosed to the carrier. *Id.* at 818.[2]

Nothing in this case justifies a deviation from the general rule. The defendant carrier supplied the trailer/container and the bills of lading describe the contents of the shipment in considerable detail. Therefore,

the trailer is not a package within the meaning of section 4(5) of COGSA.[3]

Under these circumstances, the potatoes must be considered "goods not shipped in packages" for purposes of applying section 4(5). With the exception of a number of fifty pound bags of potatoes placed at the ends of the trailer in order to stabilize the load, the goods were stowed in bulk, and the shipper did not perform any function that could be characterized as packaging. Even the defendant carrier has not suggested an alternative to the trailer as a unit of packaging. As a result, defendants' potential liability must be determined using customary freight units as a basis of computation. The precise rate will be determined in the trial of this action.

Plaintiff's motion to strike defendants' sixth affirmative defense is granted. Fed. R.Civ.P. 12(f).

So ordered.

---

1. The Court explicitly reserved decision as to cases in which the bill of lading does not indicate the number of packages or units in the container. *Mitsui & Co., supra,* at 821 n.18.

2. *Mitsui & Co., supra,* at 821, in a sense resurrects the Second Circuit's decision in *Leather's Best, Inc. v. S. S. Mormaclynx,* 451 F.2d 800 (2d Cir. 1971). *Leather's Best* involved a shipment of ninety-nine bales of leather which had been packed onto a single container by the shipper. The carrier was fully aware of the contents of the container, because the bill of lading described the shipment as "1 container s. t. c. 99 bales of leather." The court noted the purpose of COGSA to prevent extreme limitations to liability and found that each bale of leather was an individual package for purposes of section 4(5). The word package, the court wrote, is "more sensibly related to the unit in which the shipper packed the goods and described them than to a large metal object, functionally part of the ship, in which the carrier caused them to be 'contained.' " *Id.* at 815.

3. Even if the functional economics test from *Kulmerland* was still the general rule in the Second Circuit, the container was not a package under the facts of this case. The Second Circuit faced a similar situation in *Shinko Boeki Co. v. Pioneer Moon,* 507 F.2d 342 (2d Cir. 1974), which involved the shipment of liquid latex in 2000-gallon tanks supplied by the defendant carrier. The court held that, the tanks should be considered part of the ship's hold, and not packages within the meaning of the statute, noting that the functional economics test is not very helpful in cases involving bulk shipments of liquid. *Id.* at 345.

The potatoes involved in this case are similar to the liquid latex involved in *Shinko Boeki.* Both are materials that are loaded in bulk into a container, with little or no packaging necessary. Both seem precisely the type of goods that Congress had in mind when it provided in section 4(5) for goods "not shipped in packages."