**M. PRUSMAN LTD. and Sahar Insurance Co. Ltd., Plaintiffs,**

v.

**The M/V NATHANEL, her engines, boilers, etc., and against Javelin Line; Iscont Shipping Ltd.; Sarin Ltd.; and Rarial Leasing Ltd., Defendants.**

No. 85 Civ. 9485 (RWS).

United States District Court,
S.D. New York.

Sept. 23, 1987.

Waesche, Sheinbaum & O'Regan, P.C., by John R. Keough, III, of counsel, New York City, for plaintiffs.

Ronald Saffner, New York City, for defendants.

## OPINION

SWEET, District Judge,

Plaintiffs, M. Prusman, Ltd. ("Prusman") and Sahar Insurance Co. Ltd. ("Sahar") have moved for an order pursuant to Fed. R.Civ.P. 56 granting partial summary judgment in its favor against defendant Javelin Line ("Javelin") on the issue of liability for damage to plaintiffs' cargo. Javelin has opposed plaintiffs' motion on the grounds that genuine issues of material fact exist concerning its liability to plaintiffs. Prusman is the owner of the cargo and was the transferee of two bills of lading issued by Javelin. Sahar is the insurer of the cargo and has been subrogated to the rights of Prusman. Javelin is a nonvessel operating

common carrier ("NVOCC") who, acting as agent for the shipper A. Hart Rodt, Gmbh and Company, arranged for the transportation of the cargo on the M/V NATHANEL which was operated by Iscont Shipping Ltd. ("Iscont"). Upon the following facts and conclusions, the motion is granted.

### The Facts

The relevant facts in this action are not in dispute. Plaintiffs are the consignee and subrogated underwriter of a cargo of electrical heaters shipped in two containers, ARTU 2000 98–5 and CONU 232 171–7, on board the M/V NATHANEL. The two containers and their cargo were received by Javelin in good condition and loaded on board the vessel at the port of Hamburg, West Germany in October and November 1984 for carriage to Ashdod, Israel. Javelin issued two clean, "on-board" bills of lading for the cargo. Both bills of lading were issued to the order of Israel General Bank Ltd. of Jerusalem, Israel, and recite the apparent good order and condition of the containers at the time of loading.

Both containers were damaged in stow on the vessel during the voyage from Hamburg to Israel. One container (CONU 232 171–7) was destroyed, and all of its contents were dispersed during bad weather. The other container (ARTU 2000 98–5) was also badly damaged. The cargo was found wet, rusted and otherwise damaged upon discharge from the vessel in Israel. There is no dispute that the damage occurred on board the NATHANEL.

### Summary Judgment

In order to grant summary judgment, the court must determine that no genuine issue of fact exists. *See* Fed.R.Civ.P. 56(c). The court's responsibility is not to resolve disputed issues of fact, *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987), but to determine whether there are any factual issues to be tried, while resolving ambiguities and drawing inferences against the moving party. *Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. 2505, 2509–11 (1986); *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243,

249 (2d Cir.1985). On the other hand, a party cannot successfully oppose a motion for summary judgment merely by stating conclusory allegations and positing the existence of facts as yet undiscovered and, at the time, unsupported. *Contemporary Mission, Inc. v. U.S. Postal Service*, 648 F.2d 97, 107 (2d Cir.1981).

In opposition to plaintiffs' motion for partial summary judgment, Javelin alleges the following as genuine issues of material fact that should preclude summary judgment: (1) whether Javelin acted as an NVOCC and whether Prusman was aware of that status; (2) whether Javelin acted solely as agent for Iscont and is, therefore, not liable to plaintiffs for acts done within the scope of that agency; (3) whether Iscont, as the actual ocean carrier, is liable to the plaintiffs; (4) whether the claimed damages were caused by a "peril of the sea;" (5) whether the claimed damages were caused by improper packing, loading and stowage; (6) whether the Carriage of Goods by Sea Act, 46 U.S.C. § 1300 *et seq.* ("COGSA" or "Act"), is applicable to this action. For their part, plaintiffs agree that COGSA applies to this action and have stipulated that for purposes of this motion Javelin acted as an NVOCC. Because the issue of Iscont's liability to plaintiffs has not been raised by plaintiffs on this motion,[1] only Javelin's three remaining allegations of law and fact need be considered.

**1. Liability of Javelin as NVOCC**

█ Javelin contends that because it acted as an NVOCC it does not have the same liability to the consignee as a common carrier. An NVOCC operates essentially as a middleman by arranging for relatively small shipments to be picked up from shippers and shipped via a carrier or several carriers. In this capacity it functions as a common carrier with respect to the shippers who use its services. *Insurance Co. of N.A. v. S/S American Argosy*, 732 F.2d 299, 301 (2d Cir.1984); *see also* 46 C.F.R. § 510.2(k) (1986) (NVOCC is "common carrier that does not operate the vessels by

which the ocean transportation is provided"). As the Court of Appeals for the First Circuit has observed:

> [T]he important point about an NVOCC is that although it may not own the ships on which its customers' goods are physically transported, it nevertheless is the "carrier" responsible for the through transportation of such goods, including the water portion. As the carrier, an NVOCC issues its own bill of lading to each small shipper that employs its services, describing the goods for whose transportation it will be held responsible.

*Fireman's Fund American Insurance Cos. v. Puerto Rican Forwarding Co.*, 492 F.2d 1294, 1295 (1st Cir.1974).

█ Although COGSA does not define the term NVOCC, the Act's definition of "carrier" must be read to include a party who, though not an owner or charterer of a ship, enters into a contract of carriage with a shipper and otherwise holds itself out to provide transportation of property for hire by water. *See* 46 U.S.C. § 1301(a) (1986); *Demsey & Associates v. S.S. Sea Star*, 461 F.2d 1009, 1014 (2d Cir.1972). According to § 1301(b) of COGSA, a bill of lading is a contract of carriage. *Dempsey & Associates*, 461 F.2d at 1014. It is not in dispute that Javelin issued two bills of lading for the cargo and that it arranged for the transportation of the cargo by water to Israel. Thus, it is a common carrier for the purpose of determining its liability under COGSA.

Under §§ 1303 and 1304 of COGSA, a shipper or consignee can establish a *prima facie* case that its goods were damaged while in the carrier's custody by proving both "delivery of the goods to the carrier ... and outturn by the carrier ... in damaged condition. *Vana Trading Co. v. S.S. "Mette Skou"*, 556 F.2d 100, 104 (2d Cir.), *cert. denied*, 434 U.S. 892, 98 S.Ct. 267, 54 L.Ed.2d 177 (1977). When the consignee has established its *prima facie* case, the burden shifts to the carrier to show that it

---

1. By contending that Iscont's bills of lading somehow insulate Javelin from liability on its own bills of lading, Javelin overlooks that "there

can be more than one COGSA carrier of a given shipment." *Joo Seng Hong Kong Co., Ltd. v. S.S. Unibulkfir*, 483 F.Supp. 43, 46 (S.D.N.Y.1979).

exercised due diligence to avoid and prevent the harm or that the cause of the damage falls within one of the exceptions set forth in § 1304(2) of COGSA. *Id.* at 105; *M. Golodetz Export Corp. v. S/S Lake Anja,* 751 F.2d 1103, 1110 (2d Cir.), *cert. denied,* 471 U.S. 1117, 105 S.Ct. 2361, 86 L.Ed.2d 261 (1985).

Under § 1303(4) of COGSA, a clean bill of lading is *prima facie* evidence of delivery of goods to the carrier in good condition. *Madow Co. v. S.S. Liberty Exporter,* 569 F.2d 1183, 1185 (2d Cir.1978). Alternately, the consignee of containerized cargo may prove delivery of the cargo to the carrier in good condition by showing that the nature of the damage suffered indicates that the damage occurred while the cargo was in the carrier's custody. *Goya Foods, Inc. v. S.S. Italica,* 561 F.Supp. 1077, 1082 (S.D.N.Y.), *aff'd mem.,* 742 F.2d 1434 (2d Cir.1983); *Caemint Food, Inc. v. Brasileiro,* 647 F.2d 347, 355 (2d Cir.1981).

 The negotiable clean bills of lading issued by Javelin confirm that both containers were in good order and condition when delivered to Javelin at Hamburg. In addition, a "Marine Note of Protest" signed December 7, 1984 by the master of the NATHANEL records the damage to the cargo and the fact that it occurred during heavy weather at sea. Javelin does not dispute that upon discharge the cargo was wet and damaged and that the damage had occurred on board the vessel. Thus, plaintiffs have established a *prima facie* case for recovery against Javelin as an NVOCC.[2]

**2. "Perils of the Sea" Defense**

██ Under § 1304(2)(c) of COGSA, the carrier is not responsible for loss or damage resulting from perils of the sea. To bring itself within this exception, Javelin must show that (1) the NATHANEL was seaworthy at the inception of the voyage, (2) the weather encountered was unforesee-

ably severe, and (3) neither it nor its employees were negligent. 2A A. Jenner, J. Loo & J. Greider, *Benedict on Admiralty* § 153 at 15–4 to 15–15 (7th ed. 1987); *Kane Int'l Corp. v. M/V Hellenic Wave,* 468 F.Supp. 1282 (S.D.N.Y. 1979), *aff'd mem.,* 614 F.2d 1287 (2d Cir.1979); *Edmond Weil, Inc. v. American West African Line, Inc.,* 147 F.2d 363 (2d Cir.1945); *The Giulia,* 218 F. 744 (2d Cir.1914); *Palmer Distributing Corp. v. The S.S. American Counselor,* 158 F.Supp. 264 (S.D.N.Y.1957).

Javelin has failed even to allege two of the three elements of a "perils of the sea" defense: on the elements of seaworthiness of the NATHANEL and freedom from negligence, Javelin is silent. As to the third element, Javelin's reliance on the statement in the master's marine note of protest that "all damage and losses occurred to the vessel and the cargo due to heavy weather about 50–100 miles southwest of Ushant" is insufficient to establish a genuine issue as to the severity and foreseeability of the weather encountered by the NATHANEL. *See Kane Int'l Corp. v. M/V Hellinic Wave,* 468 F.Supp. at 1285. To permit such sparse allegations to defeat a motion for summary judgment would contravene the law of this Circuit that mere speculation as to the existence of disputed issues of material fact is not enough to defeat such a motion. *Quarles v. General Motors Corp.,* 758 F.2d 839 (2d Cir.1985) (*per curiam* ).

**3. Improper Loading Defense**

██ Although § 1304(2)(n) of COGSA relieves the carrier of liability for loss or damage attributable to "insufficiency of packing," Javelin has failed to present any evidence by way of supporting affidavits from people who would have some knowledge of the manner in which the cargo was packed, loaded and stowed. Accordingly, Javelin's allegations as to this exception to carrier liability fail for the same reasons as

---

**2.** Javelin attempts to shift the burden of proof, including proof of the absence of defenses open to the carrier, by referring to Paragraph 7 of its bill of lading which requires "the burden of proving liability being in all respects upon the shipper or consignee." Javelin has offered no authorities to suggest that this clause is adequate as a matter of law to maintain the burden of proof at all times on the shipper or consignee after, as here, a *prima facie* case has been established.

its bare assertions on perils of the sea. *Quarles v. General Motors Corp.*, 758 F.2d 839 (2d Cir.1985) (*per curiam*); *S.E.C. v. Research Automation Corp.*, 585 F.2d 31 (2d Cir.1978).

Javelin has failed to establish any genuine issues of facts material to the elements it must prove to defeat plaintiffs *prima facie* claim for recover. Plaintiffs motion for partial summary judgment on the issue of liability is granted.