**ORION INSURANCE COMPANY, PLC, as Lead Insurer, on its Own Behalf and on Behalf of the Other Insurers Subscribing to a Cargo Insurance Policy No. 90C0944, Plaintiff,**

v.

**The M/V "HUMACAO", Her Engines, Boilers, etc., in rem, Navieras De Puerto Rico, and Puerto Rico Marine Management, Inc., Defendants.**

No. 92 Civ. 4483 (JES).

United States District Court, S.D. New York.

May 9, 1994.

Kennedy & Lillis, New York City, for plaintiff (Thomas C. Murphy, of counsel).

Walker & Corsa, New York City, for defendants (Leroy S. Corsa and Randolph H. Donatelli, of counsel).

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Plaintiff brings this action on a bill of lading against the M/V "Humacao," Navieras De Puerto Rico and Puerto Rico Marine Management, Inc. (collectively the "defendant") to recover for damages allegedly sustained while its goods were being transported aboard defendant's vessel. Plaintiff moves, pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, to strike the third and fifth affirmative defenses from defendant's answer. Without admitting liability, defendant cross-moves for partial summary judgment asserting that its liability, if any, is limited to $500 per package. For the reasons that follow, the Court holds that defendant's third affirmative defense shall be stricken, that defendant's fifth affirmative defense shall not be stricken, and that defendant's cross-motion for partial summary judgment shall be granted.

## BACKGROUND

On or about September 27, 1990, Chevron Chemical Co. ("Chevron") delivered shipping container PRMU 673481, which it had packed and sealed with 42,298 pounds of bulk resin, to non-party Puerto Rico Express Freight, Inc. ("PREF") as freight forwarder and non-vessel-owner-common-carrier ("NVOCC").[1] Defendant's Statement of Material Facts Pursuant to Southern District Rule 3(g) ("Def. 3(g) St.") ¶ 1–2. PREF issued bill of lading NYC 2621–14460 (the "PREF Bill") to Chevron, for the entire carriage of the container from Ridgefield, New Jersey to Las Piedras, Puerto Rico. Plaintiff's Motion to Strike ("Pltf. Mtn.") Exh. B. Thereafter, the container was transported inland from Ridgefield, New Jersey to Port Elizabeth, New Jersey by truckers hired by PREF. Def. 3(g) St. ¶ 2 n. 2. At Port Elizabeth, PREF arranged for the carriage of the container to San Juan, Puerto Rico aboard the vessel M/V Humacao, owned and operated by Puerto Rico Maritime Shipping Authority ("PRMSA").[2] The managing agent of

---

1. Under federal regulations, a non-vessel-operating common carrier is defined as "a common carrier that does not operate the vessels by which the ocean transportation is provided, and is a shipper in its relationship with an ocean common carrier." 46 C.F.R. § 510.2(k) (1993).

2. The bill of lading issued by PREF purports to limit liability to not more than "$50.00 in case of loss in any shipment ..." Pltf. Mtn. Exh. B. Plaintiff chose to sue only PRMM, whose bill of lading contains the higher $500 per package limitation of liability.

PRMSA, Puerto Rico Marine Management, Inc. ("PRMM"), issued bill of lading 360–1408786 (the "PRMM Bill") to PREF, for the carriage of the container from Port Elizabeth to San Juan. Pltf. Mtn. Exh. C.

At Port Elizabeth, the container was stowed aboard the M/V Humacao in cargo hold number four and on September 29, 1990, the vessel departed for Baltimore, Maryland in order to load further cargo. Pltf. Mtn. Exh. D. In Baltimore, the M/V Humacao completed cargo and ballasting operations, and then departed for Puerto Rico on September 30, 1990. *Id.* Shortly thereafter, the vessel assumed a pronounced and abnormal list to port, and shifting operations proved ineffectual. *Id.* Upon inspection of the belowdecks, the crew discovered that several cargo holds were partially flooded with sea water. *Id.* When it became clear that the vessel's ballast system was incapable of rectifying the list condition, the M/V Humacao was diverted to Norfolk, Virginia, arriving there on October 1, 1990. *Id.* Upon inspection at Norfolk, it was discovered that cargo hold number four had been submerged in four feet of seawater, which allegedly caused damages in the amount of $26,159.72. *Id.*

On June 18, 1992, plaintiff, the subrogated leading insurer of the shipment, brought this maritime action on its own behalf and on behalf of all other subrogated subscribing insurers on cargo insurance policy number 90C0944.[3] In its answer, filed July 7, 1992, defendant asserted eight affirmative defenses. In its third affirmative defense, defendant asserts that, because there is no privity of contract between the parties, they cannot be held liable on the PRMM Bill. In its fifth affirmative defense, defendant asserts that its liability, if any, is limited to $500 for the one large container in which the bulk resin

was shipped. Plaintiff moves to strike these affirmative defenses, and defendant cross-moves for partial summary judgment on the issue of damages.

## DISCUSSION

On a motion for summary judgment, the moving party has the burden of demonstrating "that there is no genuine issue as to any material fact and that [they are] entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *See Adickes v. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The Court may not resolve disputed issues of fact, *see Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987); rather, it must determine whether there are any factual issues to be tried, while resolving all ambiguities in favor of the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). Where, as here, the relevant facts are undisputed, summary judgment is especially appropriate. *See, e.g., In the Matter of the Maritima Aragua*, 1992 WL 42256, *2 (S.D.N.Y.1992).

■ Failing to recognize the role of NVOCCs in the shipping industry, defendant argues that, because it contracted with PREF rather than Chevron, there is no privity of contract on which to premise liability under these circumstances.[4] Within the shipping industry, NVOCCs operate as "middlemen" by retrieving relatively small shipments from different shippers, and consolidating the resulting load for shipment by a carrier or carriers. *See Insurance Co. of North America v. S/S Am. Argosy*, 732 F.2d 299, 300–01 (2d Cir.1984); *Prusman Ltd. v. M/V Nathanel*, 670 F.Supp. 1141, 1143

3. Plaintiff's complaint invoked admiralty jurisdiction pursuant to Fed.R.Civ.P. 9(h). The Court's jurisdiction over the defendants is based in part upon the presence of the ship within the Southern District during the pendency of the litigation.

4. In a similar argument, plaintiff contends that, as a non-party to the PRMM Bill, the liability limitations contained therein are inapplicable to it. Under the U.S. Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C.App. § 1300 *et seq.*, however, a carrier's liability under a contract evi-

denced by a bill of lading is limited to $500 per package "in any event." 46 U.S.C. § 1304(5). Thus, plaintiff is bound by the limiting provisions contained in the PRMSA Bill, and agreed to by its agent, PREF. *See Stolt Tank Containers, Inc. v. Evergreen Marine Corp.*, 962 F.2d 276, 280 (2d Cir.1992). As the Second Circuit has noted, plaintiff could have protected itself by directing PREF to declare the container's value to defendant, or by otherwise insuring against any possible loss. *Id.*

**578**

(S.D.N.Y.1987); *see also New York Foreign Freight Forwarders and Brokers Ass'n v. Federal Maritime Comm'n,* 337 F.2d 289, 292 (2d Cir.1964) (discussing analogous concept of "freight forwarder" under Interstate Commerce Act), *cert. denied,* 380 U.S. 910, 85 S.Ct. 893, 13 L.Ed.2d 797 (1965). In short, the NVOCC is a common carrier with respect to the shippers who employ its services, but with respect to the vessel and her owner, the NVOCC is deemed an agent of the shipper. *See Insurance Co. of North America v. M/V Ocean Lynx,* 901 F.2d 934, 937 (11th Cir.1990), *cert. denied,* 498 U.S. 1025, 111 S.Ct. 675, 112 L.Ed.2d 667 (1991); *S/S Am. Argosy,* 732 F.2d at 301; *Prusman,* 670 F.Supp. at 1143.

■ Therefore, under the law of agency, defendant is bound by the PRMM Bill it executed with PREF, an agent acting on behalf of plaintiff.[5] *See, e.g., Stolt Tank,* 962 F.2d 276 (permitting recovery by shipper on bill issued by ocean carrier to common carrier). Thus, the Court must now address the extent of defendant's liability, if any, under the PRMM Bill.

■ By its own terms, the U.S. Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C.App. § 1300 *et seq.,* allocates the risk of loss for cargo damaged during international transportation under contracts evidenced by bill of ladings. 46 U.S.C.App. § 1300; *See Nichimen Co. v. M.V. Farland,* 462 F.2d 319, 327 (2d Cir.1972). However, COGSA does not by its terms apply to the carriage of cargo between a U.S. port, *i.e.,* Port Elizabeth, New Jersey, and a port located in a possession of the United States, *i.e.,* San Juan, Puerto Rico. Nonetheless, where the provisions of COGSA are incorporated into a bill of lading, COGSA applies as fully as if the shipment involved foreign trade. 46

U.S.C.App. § 1312. In the PRMM Bill, Clause 1 provides that the provisions of COGSA are fully incorporated and, in addition, Clause 17 is a $500 per package limitation of liability provision substantially similar to section 1304(5) of COGSA. Defendant's Cross–Motion for Summary Judgment ("Def. Mtn.") Exh. 1. Thus, COGSA governs the legal relationship between the parties to this action.

■ When enacted in 1936, the central purpose underlying COGSA was to afford protection to shippers against existing inequalities in bargaining power. *See Caterpillar Overseas, S.A. v. S.S. Expeditor,* 318 F.2d 720, 722 (2d Cir.), *cert. denied,* 375 U.S. 942, 84 S.Ct. 347, 11 L.Ed.2d 272 (1963). To that end, section 1304(5) provides that

neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package ... or in case of goods not shipped in packages, per customary freight unit ... unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading.

46 U.S.C.App. § 1304(5).[6] Defendant contends that, as a matter of law, the forty-foot container is a package within the meaning of section 4(5) of COGSA, and that its liability is thus limited to $500. Plaintiff argues, on the other hand, that the container is not a package, and that the bulk resin must be considered goods not shipped in packages. If so, defendant's maximum liability would be $500 per customary freight unit, in this case alleged to be "4.91 per 100 pounds gross weight." Pltf. Mtn. Exh. E.

Not surprisingly, because the statute does not define the term "package," *see Allied*

---

**5.** Under the law of agency, where an agent contracts with a third-party on behalf of a partially disclosed principal, the third-party is liable to such principal as if the parties had contracted directly. *See Castro v. Federal Ins. Co.,* 823 F.Supp. 132, 134 (S.D.N.Y.1993) (citing Restatement (Second) of Agency). Where the third-party has notice that the agent is or may be acting for a principal, yet is unaware of the principal's identity, the principal is deemed partially disclosed. *See Orient Mid–East Lines v. Bowen, Inc.,* 458 F.2d 572, 575 (2d Cir.1972)

(quoting Restatement (Second) of Agency). The Court concludes that, as a member of the shipping industry, defendant must have been aware that PREF was acting on behalf of a shipper. Thus, because Chevron must be considered a partially disclosed principal, defendant may be held liable on the PRMM Bill.

**6.** The parties do not dispute that the value of the cargo was not declared on the PRMM Bill.

*Int'l Am. Eagle Trading Corp. v. S.S. "Yang Ming"*, 672 F.2d 1055, 1057 (2d Cir.1982), and available legislative history provides no meaningful guidance, *see Aluminios Pozuelo Ltd. v. S.S. Navigator*, 407 F.2d 152, 154 (2d Cir.1968), the increased use of containers in maritime transportation has generated an excessive amount of litigation. *See Watermill Export, Inc. v. M/V "Ponce"*, 506 F.Supp. 612, 616 (S.D.N.Y.1981).

Courts at first were generally reluctant to consider containers to be packages within the meaning of COGSA. *See, e.g., Cameco v. S.S. American Legion*, 514 F.2d 1291 (2d Cir.1974); *Leather's Best, Inc. v. S.S. Mormaclynx*, 451 F.2d 800 (2d Cir.1971); *but c.f. Royal Typewriter Co. v. M/V Kulmerland*, 483 F.2d 645 (2d Cir.1973). However, in *Mitsui & Co. v. American Export Lines, Inc.*, 636 F.2d 807 (2d Cir.1981) and *Binladen BSB Landscaping v. M.V. "Nedlloyd Rotterdam"*, 759 F.2d 1006 (2d Cir.), *cert. denied*, 474 U.S. 902, 106 S.Ct. 229, 88 L.Ed.2d 229 (1985), the Second Circuit articulated some basic principles for determining when a container may be considered a COGSA package, which "provide a simple rule that is easily administered by the courts and readily amenable to *ex ante* application by the contracting parties." *Monica Textile Corp. v. S.S. Tana*, 952 F.2d 636, 643 (2d Cir.1991).[7]

█ As in non-container cases, *see Monica Textile*, 952 F.2d at 641 (quoting *Seguros "Illimani" S.A. v. M/V POPI P*, 929 F.2d 89, 92 (2d Cir.1991)), significant deference must be afforded "the contractual agreement between the parties, as set forth in the bill of lading." *Binladen*, 759 F.2d at 1012. Accordingly, notwithstanding traditional reluctance to treat a container as a COGSA package, *see, e.g., Smythgreyhound v. M/V "Eurygenes"*, 666 F.2d 746, 753 (2d Cir.1981), "if the bill of lading lists the container as a package and fails to describe objects that can

reasonably be understood from the description as being packages, the container must be deemed a COGSA package." *Binladen*, 759 F.2d at 1015–16.

As the Court stated in *Binladen, supra*,

the only certain figure known to both parties is the number of containers being shipped. In such event the carrier cannot be charged with knowledge of whether the container is filled with packages, with unpackaged goods, or with some combination. The carrier should not be expected to assume the risk inherent in such uncertainty, facing liability that might vary by orders of magnitude depending on the exact packaging of goods inside a sealed container, even though this information was not revealed to it by the bill of lading.

*Binladen*, 759 F.2d at 1015–16. On the other hand, "when what would ordinarily be considered packages are shipped in a container supplied by the carrier and the number of such units is disclosed in the shipping documents, each of those units and not the container constitutes the 'package.'" *Mitsui*, 636 F.2d at 817; *see also Monica Textile*, 952 F.2d at 642 (intention inherently ambiguous where bill refers to both containers and other units susceptible of being COGSA packages); *Leather's Best*, 451 F.2d at 815–16.

In this case, on the front side of the PRMM Bill, under the "No. of Pkgs." column, appears the notation "1 CNT." and under the "Description of Packages and Goods" column, appears the description "BULK RESIN." Pltf. Mtn. Exh. C. The Court concludes that, under any reasonable definition of the term "package," *see, e.g., Aluminios Pozuelo*, 407 F.2d at 155 (defining package as "class of cargo, irrespective of size, shape or weight, to which some packaging preparation for transportation has been made which facilitates handling, but which does not necessarily conceal or completely enclose the goods"), the PRMM Bill does not

---

7. While the Court in *Binladen* held that, under the circumstances of that case, the goods were to be considered "goods not shipped in packages," it did so only because previous judicial decisions had not afforded adequate notice to shippers and carriers that goods not clearly documented as COGSA packages or goods not shipped in packages would result in a determination that the

container was the COGSA package. *See Binladen*, 759 F.2d at 1016. For that reason, the decision in *Binladen* and the rule enunciated therein were held to govern only in future cases and not in that case. *Id*. This case, of course, involves a bill of lading issued after the decision in *Binladen*.

clearly indicate an alternative number of packages. Thus, under the rule set forth in *Binladen*, the container must be treated as a COGSA package. *See Stolt Tank*, 962 F.2d at 280; *Norwich Union Fire Ins. Society v. Lykes Bros. Steamship Co.*, 741 F.Supp. 1051, 1057 (S.D.N.Y.1990).

Relying upon *Shinko Boeki Co. v. S.S. "Poineer Moon"*, 507 F.2d 342 (2d Cir.1974) and *Watermill Export*, 506 F.Supp. at 612, plaintiff argues that the language "bulk resin," in and of itself, indicates that the goods were not shipped in packages. However, because these cases preceded the decisions in *Mitsui* and *Binladen*, and reflect a reluctance to find a container to be a COGSA package, they are no longer either relevant or dispositive.[8] Moreover, these cases cannot be reconciled with the post-*Binladen* decision in *Stolt Tank*, where the Second Circuit held that five containers holding liquid chemicals constituted packages within the meaning of COGSA. *See Stolt Tank*, 962 F.2d at 280. As with the liquid chemicals involved in *Stolt Tank*, the bulk resin, as a practical matter, "could not have been shipped overseas without some sort of container." *Id.*

In short, the drafters of COGSA sought to promote uniformity and predictability in maritime transportation by enabling parties to ascertain "when additional coverage [is] needed, place the risk of additional loss upon one or the other and thus avoid the pains of litigation." *Standard Electrica, S.A. v. Hamburg Sudamerikanische*, 375 F.2d 943, 945 (2d Cir.), *cert. denied*, 389 U.S. 831, 88 S.Ct. 97, 19 L.Ed.2d 89 (1967). In that regard, plaintiff "should expect to be held to the number that appears under a column whose heading so unmistakably refers to the number of packages." *Seguros*, 929 F.2d at 94.

Accordingly, plaintiff's motion to strike defendant's third affirmative defense shall be and hereby is granted, while plaintiff's motion to strike defendant's fifth affirmative defense shall be and hereby is denied. Defendant's motion for partial summary judgment, limiting its liability to $500 for the one damaged container of bulk resin, shall be and hereby is granted. The parties are hereby directed to appear for a Pre–Trial Conference on June 24, 1994 at 10:30 a.m. in Courtroom 705.

It is **SO ORDERED.**

---

**8.** In *Shinko Boeki*, the Second Circuit struggled to apply the "functional economics test," since rejected in favor of the *Mitsui–Binladen* analysis, with respect to a bulk shipment of liquid latex. *See Shinko Boeki*, 507 F.2d at 345. The Court held that, because tanks furnished by the carrier are functionally part of a ship much like a container, the liquid latex fell within the exception for "goods shipped in bulk." *Id.*

In *Watermill Export*, the court, relying upon *Shinko Boeki*, held that a shipment of potatoes in large metal trailers were goods not shipped in packages. *See Watermill Export*, 506 F.Supp. at 617. In exemplifying the state of the law at that time, the court stated "that a container should almost never be considered a package." *Id.* at 616.