**PORT SHIP SERVICE, INC.,**
**Plaintiff-Appellant,**

v.

**INTERNATIONAL SHIP MANAGE-**
**MENT & AGENCIES SERVICE,**
**INC., Defendant-Appellee.**

**PORT SHIP SERVICE, INC.,**
**Plaintiff-Appellant,**

v.

**ASTRAL INTERNATIONAL SHIPPING**
**SERVICES, INC., Defendant-Appellee.**

Nos. 85–3723, 85–3724.

United States Court of Appeals,
Fifth Circuit.

Oct. 3, 1986.

Randall A. Smith, Stone, Pigman, Walther, Wittman & Hutchinson, New Orleans, La., for plaintiff-appellant.

A. Jack Bennett, Jr., Baton Rouge, La., for defendant-appellee in 85–3723.

Andrew S. deKlerk, Lemle, Kelleher, Kohlmeyer, Hunley, New Orleans, La., for defendant-appellee in 85–3724.

Before JOLLY, HILL and JONES, Circuit Judges.

PER CURIAM:

In these cases consolidated on appeal, Port Ship Service, Inc. ("Port Ship"), a supplier of water taxi services, sued the maritime agent defendants, Astral International Shipping Services, Inc. ("Astral") and International Ship Management & Agencies Service, Inc. ("International Ship"), to recover for unpaid services that were ordered by those agents on behalf of their clients, owners or operators of various vessels anchored in the New Orleans environs. When ordering water taxi services, the maritime agents customarily provided Port Ship with the names of the vessels for which the services were to be performed, but not the names of the vessel owners or operators. Port Ship filed separate actions against each maritime agent, contending that, under the general law of agency, Astral and International Ship were agents for partially disclosed principals and were therefore liable for the services Port Ship had provided their clients.

The district court tried Port Ship's action against International Ship and held for the maritime agent. The court found that International Ship had sufficiently disclosed the "identity" of its principal by providing Port Ship with the vessel's name. As agent to a disclosed principal, International Ship could not be held personally liable for

the principal's debts. The district court also granted summary judgment to Astral, based on its opinion in favor of International Ship. Because it is unclear from the record whether Port Ship had, or should have had, sufficient information to determine the principals' identities, we reverse and remand.

## I

Port Ship is a Louisiana corporation primarily engaged in the business of providing water taxi services to and from vessels in the Port of New Orleans. From July 1982 until November 1983, Port Ship supplied services such as transporting pilots, crew and supplies to various ships at the direction of, or for the account of, International Ship, a corporation functioning primarily as a maritime agent. Unpaid invoices attributed to International Ship totaled $9,816.55. The maritime agent refused to pay these invoices because its clients, various vessel owners, would not forward payment. Port Ship filed suit.

During approximately the same period, another maritime agent, Astral, requested and authorized Port Ship to perform water taxi services for its clients. In similar circumstances, Astral refused to pay invoices totaling $6,272.75, and Port Ship sued.

In both cases Port Ship directly billed the maritime agents for services rendered, as is customary in the shipping business. At the *International Ship* trial, Mr. Raymond Willhoft, Jr., Port Ship's treasurer, gave testimony concerning customary business practices in the industry. According to Mr. Willhoft, maritime agents order services without stating the name of the principal that they represent or the capacity of that principal, such as charterer or owner of a vessel. Because the principals are not identified by the agents, maritime suppliers such as Port Ship rely on the agents' credit rather than that of the principals.

With respect to other sources from which Port Ship could have identified the principals, Mr. Willhoft testified that he was aware of works such as Lloyds' *Registry of Shipping* and Lloyds' *Shipping Index.* He

did not believe, however, that these publications would fully disclose who was operating a vessel at any particular time.

After trial on the merits, the district court held that the agent need not disclose the name of the principal in order to escape liability; instead, the court held, the agent needed to disclose only the "identity" of the principal. Since it was uncontested that in all cases the maritime agent, International Ship, disclosed the name of the vessel, the district court held that Port Ship could discern the identity of the principal through easily available maritime information sources such as Lloyds' publications.

The district court also supported its holding by finding that Port Ship knew the maritime agent would not pay for services until it had been paid by the principal. Finally, the court noted that Port Ship could bring an action *in rem* against the vessel to satisfy outstanding debts.

Following the district court's dismissal of the complaint in *International Ship* and its grant of summary judgment for Astral, Port Ship appealed both actions, which have been consolidated.

## II

The question we must decide is whether on the record before us Port Ship had sufficient notice of the identities of the principals at the time of the transactions to preclude liability on the part of the maritime agent appellees.

## III

### A.

■ All parties agree that general agency law applies to these cases. *West India Industries v. Vance & Sons AMC-Jeep,* 671 F.2d 1384, 1387 (5th Cir.1982). This circuit has often referred to the *Restatement (Second) of Agency* for an accurate statement of general agency law. *E.g., Lubbock Feed Lots, Inc. v. Iowa Beef Processors,* 630 F.2d 250, 275–76 (5th Cir.1980). Under the *Restatement,* an agent is liable as a party to the contract when the other

party has notice that the agent is or may be acting for a principal, but the other party has no notice of the principal's identity. *Restatement (Second) of Agency* §§ 4(2), 321. The agent is then said to be acting for a partially disclosed principal. *Id.* at § 4(2). Astral and International Ship will therefore be liable for these debts as parties to the contracts if the name of the vessel was not sufficient to put Port Ship on notice of the principals with whom they were dealing under the applicable legal tests. We must therefore first determine who the principal is.

### B.

■ International Ship contends that the vessel itself is the principal here because, under maritime law, the vessel has an identity of its own and can be sued *in rem.* Although it is indisputable that an *in rem* action exists, the availability of that action and the fictional identity of the vessel do not make the vessel a principal. Port Ship has brought a proper *in personam* action to recover these debts against the agents, not a libel *in rem* to foreclose on a maritime lien. No recovery against the ships has been sought; the fiction of the ship's identity therefore has no application or utility in this context. G. Gilmore & C. Black *The Law of Admiralty* §§ 1–12, 9–19 (2d ed. 1975). "The *in personam* suit ... is a suit against a named natural or corporate person, asserting a personal liability." *Id.* at §§ 1–12. The principal therefore is the person responsible for payment of these debts by virtue of ownership of the vessel, charter provisions, or some other mode of liability.

■ Furthermore, the availability of a maritime lien does not bar an *in personam* action. A maritime lien is a remedy separate from an *in personam* action against the owner or operator. *Equilease Corp. v. M/V Sampson,* 793 F.2d 598, 602 (5th Cir. 1986) (en banc). The maritime creditor may choose either remedy if that remedy is available under the substantive law. *Dowell Division of Dow Chemical Co. v. Franconia Sea Transport, Ltd.,* 504 F.Supp. 579, 581 (S.D.N.Y.1980), *aff'd,* 659 F.2d 1058 (2d Cir.), *cert. denied,* 454 U.S. 941, 102 S.Ct. 478, 70 L.Ed.2d 249 (1981). Consequently, the potential availability of maritime liens in these cases does not preclude these *in personam* actions.

### C.

■ Since the vessel is not the principal, Astral and International Ship did not disclose the identity of the principal by naming the vessels for which the services were to be provided. They must therefore be liable for these debts unless Port Ship had a duty to discover the identity of the principal, or unless naming the vessel identified the principal under the applicable legal standards. The *Restatement* makes it clear that it is the agent's duty to disclose the principal's identity, not the third party's duty to ascertain that identity. *Orient Mid-East Lines v. Albert E. Bowen, Inc.,* 458 F.2d 572 (2d Cir.1972). A third party such as Port Ship, however, need only receive *notice* of the identity of the principal, which may come from any source. *Restatement* at § 4, Comment (d). Furthermore, the identity of the principal can be sufficiently disclosed even when the third party has no actual knowledge of it; "the [third party] has notice of the existence or identity of the principal if he knows, has reason to know, or should know of it, or has been given a notification of the fact." *Lubbock Feed Lots, Inc. v. Iowa Beef Processors,* 630 F.2d 250, 275–76 (5th Cir.1980) (quoting *Restatement* at § 4(2), Comment (a)). Astral and International Ship could therefore have satisfied their duty to provide notice of the identities of the principals by giving Port Ship sufficient information so that Port Ship knew, or should have known, or had reason to know, through any other source, the principals' identities.

■ International Ship and Astral argue that Port Ship should have known the principals' identities because Port Ship knew the names of the vessels, and could have discovered the identities of the principals

from readily available sources such as Lloyds' publications.[1] Maritime reference sources, however, could supply the requisite notice only if, first, they contain the necessary information, and, second, if Port Ship had, or reasonably should have had, ready access to the information through these sources at the time of the transaction.

The records in these cases do not resolve these questions. We therefore find that remand is necessary. The record before us suggests that the only basis for a finding that the principals were disclosed would be that Port Ship had, or should have had, ready access to information that would have indicated who the owner or charterer of the vessel was when the order was placed. This question should require only a brief supplement to the record. The district court will probably find it appropriate to consider the following factual questions, *inter alia*, in making its findings: the information contained in the references, its accuracy and currentness, and whether Port Ship, in the light of industry custom in maintaining these sources, knew, or should have known the principals' identities from these sources at the time it furnished the water taxi service.[2]

### IV

The judgment of the district court is therefore reversed and remanded for proceedings consistent with this opinion.

REVERSED AND REMANDED.

1. Astral argued that it was an uncontested fact at trial that "Port Ship, being experienced in maritime affairs, possessed sufficient information to determine the name of the relevant owner, operator, or charterer of any vessel to which it rendered services." This statement, however, is contained only in a statement of uncontested facts filed by Astral and never agreed to by Port Ship. In fact, Port Ship contested this very point in the pretrial order.

2. The maritime agents also contend that the custom in the maritime industry is to specify only the vessel's name when ordering services, and that it is not customary to name the vessel owner or operator. The agents contend that the

strength of this custom is evidenced by the fact that Port Ship's own delivery tickets provide no place to list the operator of the ship. They argue that this custom has been accepted by Port Ship, and it is therefore bound to recognize that the name of the ship is adequate notice of the principal and relieves the agent of liability. This argument is a subtle attempt to change the standard of agency law. That standard holds that the agent is a party to the contract when the principal is partially disclosed, placing the risk of failure to inform the third party on the agent. A custom to which Port Ship has not explicitly agreed cannot change that allocation of risk. *Restatement* at § 321.