**Bernadette CASTRO, Plaintiff,**

v.

**FEDERAL INSURANCE COMPANY, Defendant.**

**No. 89 Civ. 5559 (CHT).**

United States District Court, S.D. New York.

May 18, 1993.

Supplemental Opinion on Reconsideration June 29, 1993.

Donovan Parry Walsh & Repetto, New York City (David R. Hornig, of counsel), for plaintiff.

Bigham Englar Jones & Houston, New York City (Donald T. Rave, Jr., of counsel), for defendant.

## OPINION

TENNEY, District Judge:

Plaintiff Bernadette Castro ("Ms. Castro") brought this action pursuant to 28 U.S.C. § 2201 (1982) and Rule 57 of the Federal Rules of Civil Procedure. She seeks a declaratory judgment that the defendant, Federal Insurance Company ("Federal"), has a duty to defend and to indemnify her in a legal action pending in the United States Virgin Islands. Ms. Castro is a third party defendant in *Whitmer v. Castro Convertible Corp., et al.*, Civ.No. 1990/27 (D.V.I.) ("the *Whitmer* action"). She claims that she is entitled to reimbursement from Federal for expenses she has already incurred in defending that action, as well as recovery of her share of the $75,000 paid to settle the *Whitmer* action. Moreover, she seeks to recover legal fees and costs incurred in pursuing this declaratory judgment action, alleging that Federal acted in bad faith when it refused to defend her in the *Whitmer* action.

This court has diversity jurisdiction pursuant to 28 U.S.C. § 1331 (1966 & Supp.1993): Ms. Castro is a citizen of New York, and Federal is a corporation doing business in New Jersey, with no principal offices in New York.

Following a bench trial in December of 1992, this court heard further argument from both parties. For the reasons stated below, the plaintiff's request for a declaratory judgment is granted.

## BACKGROUND

At the end of 1987, Ms. Castro arranged to charter a sailing vessel for her children's use during their spring recess. She asked Rob Shelnut ("Captain Shelnut") to help her make the arrangements. Captain Shelnut was captain on the AVANTE, a yacht owned by the Castro Convertible Corporation ("Castro Corp."). He contacted a yacht charterer broker, Tom Collins ("Mr. Collins"). Mr. Collins, in turn, contacted La Vida Charterers, Inc. ("La Vida"), which offered a boat called the "JUST PERFECT." La Vida issued a charter reservation form and charter contract form [1] to Mr. Collins. He forwarded the documents to Captain Shelnut, who filled them out and signed them. He did not indicate on the contract or the reservation form that he was signing pursuant to Ms. Castro's authorization. Exhs. 2, 3. The JUST PERFECT was insured under a La Vida policy issued by Federal. The term "insured" was defined in the policy as including:

> Any person, charterer, firm, corporation, partnership, or other legal entity who may be operating the yacht(s) with the prior permission of the named insured.

Exh. 1, Endorsement at 1. The policy provided coverage "for damages a covered person is legally obligated to pay for bodily injury...." Exh. 1, Yacht Policy at 5. The policy also provided that Federal would "defend a covered person against any suit seeking covered damages for bodily injuries or property damages ... even if the suit is groundless, false or fraudulent." *Id.*

When Ms. Castro's children went to the Virgin Islands, Captain Shelnut accompanied them at her request; he also brought James Whitmer ("Mr. Whitmer"), who was the chief engineer of the AVANTE, to assist him. The two men stayed with the children on the JUST PERFECT, which was chartered for a one week period beginning on February 13, 1988.

On February 19, the JUST PERFECT was anchored in Cruz Bay on the island of St. John. That night Mr. Whitmer set out from the JUST PERFECT in a dinghy, accompanied by one of Ms. Castro's children. After the engine lost power, the dinghy drifted toward the mouth of the Cruz Bay Har-

---

1. The term "charter form" simply denotes a standard reservation form or contract used for the purposes of hiring a vessel.

bor, where it was struck by a ferry, the NIKKI V. Mr. Whitmer was seriously injured and was taken by Medivac helicopter to a hospital in Gainesville, Florida.

Seven months later, Ms. Castro received a letter from a law firm representing Mr. Whitmer; the firm demanded payment for medical bills and for the injuries that Mr. Whitmer had sustained in the collision. Exh. 35. When Ms. Castro's insurance company told Federal about the letter, Federal responded that it would not provide her with a defense. Exh. 4. She brought this declaratory judgment action on August 17, 1989.

The action in the Virgin Islands involves a number of parties. Mr. Whitmer brought suit against Castro Corp. and Varlack Ventures[2] on September 3, 1990 in the Virgin Islands district court. Castro Corp. brought a third party claim against La Vida Charterers, Inc., La Vida Management Co., Inc., Caribbean Ventures, Inc., and Captain Shelnut (the "La Vida defendants").

Federal provided the La Vida defendants with a defense and a promise of indemnification. On September 30, 1991, Varlack Ventures brought a third party action against the La Vida defendants and Ms. Castro. This third party action caused Ms. Castro again to request that Federal provide a defense; again, Federal refused.

## DISCUSSION

### I. Ms. Castro as a Disclosed Principal

■ Whether Federal has a duty to defend or to indemnify Ms. Castro depends on whether she was a disclosed principal of Captain Shelnut. If she is a disclosed principal, she may enforce the contract with La Vida, and the accompanying insurance policy, as though she were a party to it. See Restatement (Second) of Agency § 292 (1958); Comind, Companhia de Seguros v. Sikorsky Aircraft Div. of United Technologies Corp., 116 F.R.D. 397, 408 (D.Conn.1987).

Ms. Castro intended to, and did, give Captain Shelnut full authority to charter a boat for her sons' spring vacation. She told Cap-

tain Shelnut that he would be in charge, and that she would pay all expenses. Tr. 61–62. She sent a personal check to Mr. Collins confirming the trip and paying for the charter, Exh. 7, and told Mr. Collins in an accompanying letter that Captain Shelnut "[would] be handling all details regarding this charter," Exh. 6.

The more difficult question is whether knowledge of the agency relationship may be imputed to La Vida. Ms. Castro never spoke with La Vida; Captain Shelnut signed the La Vida contract without explicitly stating that he was acting as Ms. Castro's agent. Nonetheless, La Vida received enough information concerning Ms. Castro's involvement that it was on notice of her function as principal under the contract.

The Restatement (Second) of Agency § 4 (1958) defines the concept of disclosed and undisclosed principals as follows:

(1) If, at the time of a transaction conducted by an agent, the other party thereto has notice that the agent is acting for a principal and of the principal's identity, the principal is a disclosed principal.

\* \* \* \* \* \*

(3) If the other party has no notice that the agent is acting for a principal, the one for whom he acts is an undisclosed principal.

*Id.* The comments to the Restatement provide that "[t]he other party has notice of the existence or identity of the principal if he knows, has reason to know, or *should* know of it, or has been given a notification of the fact." *Id.* cmt. a (emphasis added). According to the Restatement, a person "should know of a fact if a person of ordinary prudence and intelligence, or the intelligence which such person has or professes to have, would ascertain ... that such a fact exists or that there is such a substantial chance of its existence that his action would be predicated upon its possible existence." *Id.* § 9 cmt. e.

In *Port Ship Service, Inc. v. International Ship Management & Agencies Service, Inc.,* 800 F.2d 1418 (5th Cir.1986), Port Ship Service sued two maritime agents to recover

---

**2.** Varlack Ventures is the owner of the NIKKI V—the ferry that collided with the dinghy Whit-

mer was in when the collision occurred. Exh. 15.

fees that the agents' clients had failed to pay. The district court had found that the clients were disclosed principals, and that the agents could not be held liable to Port Ship. The circuit court reversed, reasoning that the district court did not have sufficient information to determine whether disclosure had occurred. The court pointed out that, although any *duty* to disclose lies with the agent, and the third party has no affirmative duty to uncover a principal's existence, nonetheless "a third party ... need only receive *notice* of the identity of the principal, which may come from any source." *Id.* at 1421 (citing Restatement (Second) of Agency § 4, cmt. d). The court also stressed that "the identity of the principal can be sufficiently disclosed even when the third party has no actual knowledge of it." *Id.*

After remand and extensive factual findings, the district court found that the principal was partially disclosed, and that the agents were not liable to Port Ship. Port Ship again appealed, arguing that the district court had improperly shifted the burden of inquiry over to it. The Fifth Circuit affirmed the district court, again emphasizing that "[t]he agent is not required to identify, explicitly, its principal, and the third party may even lack actual notice." *Port Ship Service, Inc. v. Norton, Lilly & Co.*, 883 F.2d 23, 24 (5th Cir.1989), *cert. denied*, 495 U.S. 962, 110 S.Ct. 2575, 109 L.Ed.2d 756 (1990); *see also Comind, Companhia de Seguros*, 116 F.R.D. at 406 ("Notice does not have to be in writing, nor does it have to be 'actual' notice.").

Mr. Collins was asked in a deposition whether he understood that Captain Shelnut was acting as Ms. Castro's agent. He responded, "Well, I didn't know. I honestly wouldn't know how to put it as formally, that is, but I did understand that he was working on behalf of the family. It was going to be a family vacation the way I understood it, yes." Tr. at 21; Deposition of Tom Collins, taken on November 20, 1990, at 4 ("Collins Dep.") (Exh. 23). Mr. Collins also received a check in payment for the charter directly from Ms. Castro. Exh. 7. He also wrote back to Ms.

Castro to confirm receipt of the check and follow up. Exh. 8.

Although it is quite clear that Mr. Collins understood that Captain Shelnut was acting on behalf of Ms. Castro, the question of whether La Vida knew is not so easily ascertainable. When Mr. Collins was asked at his deposition whether he passed the information on verbally to La Vida, he responded, "I don't honestly know if I said that to them in so many words, no, I don't." Collins Dep. at 45; Tr. at 42. Yet at that deposition, he was read information from a prior affidavit that he had signed, in which he stated quite clearly that he had passed on that information to La Vida. The affidavit had stated:

> In the course of my communications with Claudette F. DeFoe [an employee of La Vida], I advised her that Bernadette Castro, of Castro Convertible Corporation, had arranged for the charter of Centurion 40 out of St. Thomas for the week of February 13–20, 1988. I also advised Claudette F. DeFoe that Captain Robert Shelnut would be operating the vessel at the request of Bernadette Castro and that the members of the Castro Convertible family would be on board the vessel. This information was confirmed in a letter dated January 15, 1988 that I sent to Ms. Claudette F. DeFoe at La Vida that accompanied Tom Collins' Check No. 4860 in the amount of $2,529.40.

Tr. 27. The letter to which Mr. Collins had referred in the affidavit, and also in his deposition, was a memorandum sent with the check to La Vida for the full amount of the charter.[3] Claudette DeFoe was the La Vida employee with whom Mr. Collins dealt most of the time. In the memo, after briefly detailing Captain Shelnut's qualifications, Mr. Collins stated that he had enclosed "their fees" for the yacht. The memo concludes with: "By the way, this is the Bernadette Castro family (of Castro convertible furniture[ )]." Exh. 26.

In response to Castro's allegations that Mr. Collins told La Vida that Captain Shelnut was working for or on behalf of the Castro family, the defendant called two em-

---

**3.** Collins did not send Ms. Castro's check directly; he deposited that check and wrote a check from his business's account (Tom Collins Yacht Charter) to La Vida.

ployees of La Vida: George Bell and Ms. DeFoe. At the time of the incident in the Virgin Islands, Mr. Bell was a vice president and director at La Vida. He testified that he had never seen the Collins memorandum to La Vida until after the accident, and that the memo was not in the file that La Vida had maintained for papers concerning the trip. Tr. 118–19.

Ms. DeFoe, who at the time of the accident held the title of "Charter Consultant" with La Vida, testified to the same effect. Tr. 136. Ms. DeFoe stated that the Collins memorandum could not have been received by La Vida because if it had, it would have been placed in the file that contained all information about the trip. On cross-examination, she testified that every document sent from La Vida to a charterer also would have been kept in the file. Tr. 137. Yet it was then shown by the plaintiff that at least one letter sent to Mr. Collins by La Vida, Exh. 30, was *not* in the file. Tr. 138. Moreover, the file did not contain an inventory list of provisions with which the boat was to be stocked. Yet Ms. DeFoe had emphatically stated that any documentation concerning a particular trip was kept in the single file that existed as to that trip. Tr. 137.

In light of the testimony of the defendant's witnesses, it seems an inevitable conclusion that very little was in fact kept in the file on Captain Shelnut's trip. Exh. C. The file was labelled, "Captain Shelnut ... 2/13–20/88." It contains what appears to be a cover sheet of sorts, stating the type of boat, fee paid and balance due, number in the party, arrival time and flight number, and room to make other notations. It contains a copy of the charter reservation form and charter contract, a "charter information sheet," a receipt for the check from Mr. Collins, and Captain Shelnut's resume. However, the file contains no correspondence to or from La Vida. Perhaps most telling is the omission of certain data on the charter information sheet. Where the form asks "Name of Charterer," the name "Captain Shelnut" is written in. The dates of the trip and the type of boat are also filled in. What follows is a listing of certain tasks performed, e.g. "Contract Mailed," "Contract Rec'd,"

"Resume Rec'd," "Reminder Letter," "Fees," and "Deposits Rec'd/Insurance Rec'd." To the right of this list are columns headed by "Date," "Letter Sent," and "Copy to Kevin." No information is entered in any of these columns.

It is obvious from an examination of the testimony and evidence at trial that La Vida kept its records with a certain degree of casualness. One may reasonably infer that La Vida in fact received the Collins memorandum, and that at least one of its employees discussed Ms. Castro's involvement with the trip.

Although Captain Shelnut never indicated that he was Ms. Castro's agent as such, the information that La Vida had—her name, and the knowledge that it was her family who was coming on the trip, along with the fact that Captain Shelnut was coordinating the trip *for her*—were sufficient to put La Vida on notice as to the principal and agent relationship. *See Getty Oil Co. v. Norse Management Co. (PTE)*, 711 F.Supp. 175 (S.D.N.Y.1989) (even though name of principal was not disclosed on contract, third party had sufficient information available to it that put it on notice, and principal was deemed to have been disclosed).

We note an additional point supporting the finding that La Vida was aware that Captain Shelnut was not the charterer in every sense of the word: Mr. Bell testified that he knew of Captain Shelnut because Captain Shelnut had "done several charters, deliveries, I should say, for my partner before. I came down to La Vida back in '83, and after that he delivered several boats from the United States to [La Vida] for a fee." Tr. 127. It seems difficult to believe that La Vida, being aware of Captain Shelnut's business experience, would think that he was treating the children of Bernadette Castro to a vacation at his own expense, or that he was merely on a pleasure trip. *See In re Uiterwyk*, 77 B.R. 907, 908 (Bankr.M.D.Fla.1987) (finding that principal was disclosed where third party was aware of practice of using agent to procure goods for principal).

*II. Coverage Under the Insurance Policy*

■ The insurance policy that covered Captain Shelnut, and now covers Ms. Castro as a disclosed principal, stated that Federal Insurance would indemnify the insured in any action for bodily injury. Exh. 1. The *Whitmer* action required that Ms. Castro hire defense counsel, and the action was ultimately settled for $75,000. Evidence was presented at trial concerning the expenses that Ms. Castro's law firm had incurred in defending both her and Castro Corp. in the action. Although the firm did not bill her as an individual separately from the corporation, the goals of each defendant were common. Federal should pay one half of the legal fees that the law firm billed in connection with the *Whitmer* action. Moreover, any amount that Ms. Castro has paid in settlement of the action should be repaid to her by Federal.

■ Although Ms. Castro contends that she is also entitled to the attorneys' fees she incurred in bringing this declaratory judgment action, any such reimbursement would require a finding of bad faith on the part of Federal Insurance. We find no such evidence of bad faith, and Ms. Castro is not entitled to the attorneys' fees she has incurred in connection with this case.

### CONCLUSION

The plaintiff's request that a declaratory judgment be issued to the effect that she has a right to a defense and settlement costs in the *Whitmer* action is hereby granted. This Opinion shall constitute the findings of fact and conclusions of law as required by Rule 52. Plaintiff to submit judgment in conformity herewith.

SO ORDERED.

### SUPPLEMENTAL OPINION AND ORDER

The plaintiff, Bernadette Castro ("Ms. Castro"), was granted a declaratory judgment following a bench trial in December of 1992. *See* Opinion of May 18, 1993. At the court's direction, she submitted a proposed final judgment in which the defendant, Federal Insurance Company ("Federal") was ordered to indemnify her in an action in the Virgin Islands captioned *James Whitmer v. Castro Convertible Corp., et al.* ("the *Whitmer* action"). Federal submitted objections to entry of the proposed final judgment. Upon reconsideration, the court has decided to await disposition of the intervening action before issuing any final judgment as to Ms. Castro.

*I. The Intervenor Action by Lloyd's of London*

James Whitmer worked for Ms. Castro on the AVANTE, a yacht owned by Castro Convertible Corporation ("Castro Corp.") and used by Ms. Castro. After he was injured in the Virgin Islands while working on the JUST PERFECT, a boat Ms. Castro had chartered for her children, he sued both Ms. Castro individually and Castro Corp.[1]

Lloyd's of London ("Lloyd's") is the insurer of the AVANTE, on which both Castro Corp. and Ms. Castro are named assureds. It intervened in this action in February of 1992, claiming that Federal was obligated to indemnify Lloyd's for "sums which it may become obligated to pay as a result of its insured's operation of the [JUST PERFECT]." Complaint in Intervention at 3, ¶ 15. Moreover, Lloyd's claims that it and Castro Corp. are also entitled to the benefits of the Federal policy, and that Lloyd's itself may be entitled to reduce its own liability because of the "other insurance" clause contained in its policy on the AVANTE. In an order of May 19, 1992, Kenneth Conboy, U.S.D.J., stayed the intervenor action and all discovery connected to it until the primary action—i.e., the one involving only Ms. Castro and Federal—was resolved.

*II. Federal's Objections to Filing of a Final Judgment*

Federal claims that under Rule 54(b) of the Federal Rules of Civil Procedure, Ms. Castro may not obtain a final judgment here because the opinion rendered after the December trial "does not adjudicate all of the rights and liabilities of all of the parties to

---

**1.** The factual background of the case is laid out in Opinion of May 18, 1993, at 133–34.

this action or specify why final judgment as to only some of the parties is appropriate." Objections at 2. Federal further claims that the adjudication of Lloyd's liability is an essential component to establishing the extent of Federal's liability.

Federal also asserts that the proposed judgment unfairly requires it to pay the full amount of the settlement paid by Ms. Castro to Whitmer—$75,000. According to Federal, the $75,000 was paid on behalf of both Ms. Castro and Castro Corp. Federal has thus far only been found liable to Ms. Castro; it argues that Castro Corp. may or may not be obligated to bear the burden of part of the settlement costs, depending upon the disposition of the intervening action.

### III. Discussion

 Rule 54(b) of the Federal Rules of Civil Procedure states that

> [w]hen more than one claim for relief is presented in an action, ... the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of the judgment.

Federal objects that the opinion previously issued contains no such "express determination." Although we do not believe that Ms. Castro's rights will change after adjudication of the intervening action, we still must deny entry of a final judgment in her favor at the present time.

■ Ms. Castro claimed in her pre-trial and post-trial submissions that she was entitled only to her "proportionate share" of the $75,000 settlement that she paid on her behalf and on behalf of Castro Corp. from her personal account. *See* Exhibit A, attached to Response Affidavit of David R. Hornig, Attorney for Plaintiff, sworn to June 25, 1993. She did not offer any evidence at trial to explain how the liabilities for the settlement would be apportioned between her and the corporation. *See* Trial Transcript at 84, 11, 13–16. It is unclear whether she has been, or will be, reimbursed by Castro Corp. In the proposed final judgment that she submit-

ted, however, she seeks the full $75,000. Until further evidence is presented as to the apportionment of the settlement between Ms. Castro and Castro Corp., Federal should not be required to pay Ms. Castro the full amount that they paid together in the settlement.

WHEREAS the disposition of the primary action has been completed, it is hereby

ORDERED that the stay in the intervenor action by Lloyd's and Castro Corp. is hereby lifted. Pre-trial conference to take place by August 1, 1993.

SO ORDERED.